The opinion of the court was delivered by
Brewer, J.:
Two questions are presented in this case. One arises on a motion to set aside a summons. The summons commenced in this form: “The State'of Kansas, Lyon county, ss.: To the Sheriff of Lyon county,” etc. The constitution provides that “The style of all process shall be 'The State of Kansas.’” (Art. 3, § 17.) It is insisted that “The State of Kansas”- is limited by Lyon county, and that the command to the sheriff is from the county and not from the state. This error, if error it be, is purely technical, and does not affect .the substantial rights of the party, and may therefore be disregarded.
The second question arises on the rejection of testimony. The action was on a note and mortgage. The answer set up two defenses, 1st, a general denial, and 2d, a counterclaim, or set-off. In this second defense the defendant alleged that the note and mortgage were a part of and grew out of one entire transaction, as follows: That a short time before the execution of the note Truitt and Baird were equal partners in the nursery business, Truitt being ignorant and Baird thoroughly conversant with the business; that Baird represented that he had a large amount of nursery stock in Quincy, 111., which he would put into the capital-stock of the firm at as low a price as such stock was selling in Quincy, as against which Truitt might furnish money or property of equal value; that to this, Truitt assented; that in pursuance thereof Baird turned in ten thousand apple trees at $50 per thousand, falsely and fraudulently representing that such trees were selling at $50 per thousand in Quincy, when in fact he had purchased them there at $35 per thousand; that Truitt, ignorant of the fact, and relying on Baird’s representations, turned *423 into the capital-stock money and other property of value equal to that of the trees at $50 per thousand; that a short time thereafter Baird proposed to sell his interest in the partnership to Truitt, and in order to induce him to purchase, knowingly, falsely, and fraudulently represented that all of the nursery stock of said firm was in a good living and growing condition, and would do well, and that Truitt, ignorant of the truth, and relying on these representations, purchased his interest for $1,100, for a part of which the note and mortgage sued on were given; that Baird’s interest in said stock, if it had been as represented, would have' been worth $1,100, but in fact said stock was not in a good condition to live, as Baird well knew, but was in a dying condition, and more than 80 per cent, did die, and the rest were of little value, by which Truitt was damaged in the sum of $1,000, for which he asks judgment. To this a reply was filed containing a general denial. The bill of exceptions states that testimony was given tending to prove and disprove all the allegations of this defense except as to the price paid by Baird for the trees. Baird, while on the stand, testified that he bought three of the ten thousand trees at a wholesale-and-retail nursery at Quincy. He was then asked what he paid for those trees he bought in Quincy, Illinois. To this question an objection was.made, that it was incompetent, irrelevant, immaterial, and not responsive to any of the issues in the pleadings. The objection was sustained, and this ruling is the alleged error.
To determine whether there was any error in this ruling, we must inquire whether in the second defense stated in the answer there be sufficiently pleaded any counterclaim or set-off, and if so whether the testimony ruled out tended to prove any allegation of such counterclaim or set-off. In reference to the first question, it would seem that the pleader had attempted to incorporate in the one defense two separate defenses, one a cause of action growing out of a contract to furnish money and property to the partnership, and the other for damages resulting from false representations in the sale of an interest in the partnership. These should have been *424 separately stated and numbered; but as no motion was made to compel the defendant to do this, the error was waived. No attention need be paid to the second of these defenses, as the testimony rejected could have no bearing upon it. Was the first sufficiently pleaded? No objection was made to the manner in which this defense was pleaded, no motion to make the answer more specific and certain. The plaintiff was'content to take issue on the pleading as presented. If, therefore, by a liberal construction of its language, a cause of action is stated, it must now be held sufficient. It alleges a contract to contribute an equal amount to a partnership, the plaintiff to contribute nursery stock, and the defendant money and other property. It avers full compliance on the part of the defendant, and' a breach thereof by the plaintiff. It also avers a subsequent closing of the partnership by a sale of the interest of one partner to the other. This, as it seems to us, shows a cause of action in favor of the defendant and against the’ plaintiff, a cause of action also arising on contract, and therefore proper matter of set-off. It is not a matter involving any re-opening of the partnership affairs and a settlement of the partnership accounts. It is a contract independent of and outside the partnership business. ' It does not involve any question as to the general accounts between the partners. In Collamer v. Foster, 26 Vermont, 758, the court says: “ Thus, if one partner agrees to advance a specific sum •of money as his proportion of the capital, an action at law will lie to recover that amount, even during the partnership. Such was the case of Venning v. Leekie, 13 East, 7, and Gale v. Leekie, 2 Starkie, 107.” (See also Currier v. Webster, 45 N. H., 226; Williams v. Henshaw, 11 Pick., 79; Story on Partnership, § 219, and notes; Collier on Partnership, 235, § 270.)
The other question is, whether the testimony rejected tended to prove any allegation in this defense, and was competent evidence. The contract of plaintiff was to put into the partnership certain nursery stock “ at as low a price as such stock was selling in Quincy, Illinois,” and the question was, What was *425 such price? The plaintiff was called as a witness, and testified that he purchased this stock or a portion of it at Quincy, and was then asked what he paid for it. Now it may be conceded that the price paid for an article is not the ordinary test of its value, nor the ordinary evidence thereof. But the point of inquiry here was not the value of such stock in Quincy, but its lowest setting^priee there. This may not be absolutely and necessarily determined by proof of a price at which a single sale was actually made. Extraordinary circumstances may have induced a sale at an excessively low figure. A price obtained under such circumstances was not the price contemplated by the parties to this contract. It was, however, the lowest price, at which, in the ordinary course of business, such stock was sold in that market. And proof of a bona fide sale, actually made, in the ordinary course of business, and in the absence of any peculiar and extraordinary circumstances, is. strong evidence of such lowest selling-price. As such, it was testimony bearing upon one of the material allegations of this defense, and competent testimony to sustain it. It seems to us therefore that the court erred in sustaining the objection to this testimony, and for this error the judgment must be reversed and a new trial awarded. '
All the Justices concurring.