No. 38,853

RALPH UPHAM, *Appellee*, v. FRED TAYLOR, *Appellant*.

(254 P. 2d 289)

Opinion filed March 7, 1953.

*Lee Hornbaker*, of Junction City, argued the cause, and *H. W. Harper*, of Junction City, was with him on the briefs for the appellant.

*I. M. Platt* and *C. I. Platt*, both of Junction City, argued the cause and were on the briefs for the appellee.

The opinion of the court was delivered by

HARVEY, C. J.: This was an action for a judgment for money alleged to be due plaintiff from defendant under a written contract.

The appeal is *first* from orders of the trial court overruling defendant's motion to strike certain language from the petition and a motion to require the petition to be made definite and certain in certain respects. The matters referred to in these motions were quite inconsequential. The court did not err in its rulings, and they do not constitute appealable orders.

*Second,* defendant appeals from the order of the court overruling his general demurrer to plaintiff's amended petition. It appears from the petition and the exhibit attached thereto that plaintiff is the owner of described real property in Geary county upon which he had been operating a hatchery and poultry farm; that about October 1, 1948, plaintiff and defendant orally agreed to enter into a partnership in the operation of the hatchery and poultry farm, and that thereafter, about January 1, 1949, the contract was reduced to writing. This contract, after stating the names of the parties and the fact that plaintiff was the owner and had been operating the hatchery and poultry farm, provided:

"Whereas, it is the general purpose of the parties hereto to operate said business on the basis of the first party furnishing the fixed assets capital without interest and having supervisory control, and second party furnishing *all the labor in connection with the operation of said business."* (Our italics.)

In separate paragraphs it provided that the first party should furnish all equipment on the premises, including about five acres of land; and that he should furnish the working capital necessary to carry on the business, an unfurnished residence on the premises for second party without cost, and pasture for two cows for use of second party; that first party should have general supervision, and if any differences arose between them the decision of the first party should be final. It further provided:

"Second party shall furnish all labor for the operation of the business, and if it is necessary to employ any extra labor than his family, the same shall be charged to and paid by second party out of his share of the net profits, as hereinafter defined."

The contract defined net profits as follows:

"Net profits shall be defined or arrived at by taking the gross sales and subtracting therefrom the net cost of the merchandise sold, which net cost is to be determined by taking the original invoice, adding thereto purchases and subtracting from said gross income all the expenses incident to the operation of said business, including taxes, repairs, and such like, *but excluding wages, which item is the exclusive obligation of second party.* By the term taxes, it is not meant the taxes upon any of the capital assets furnished by first party. The tax on these items of property is the obligation of first party." (Italics ours.)

There was a schedule as to how net profits should be decided. Since we are told there were no net profits we are not concerned with that here. The operations under the contract commenced October 1, 1948, and were to extend to October 1, 1949. It stated the fiscal year to terminate on December 31 of each year, and further provided that the contract should terminate on the death of either party, or that either party might terminate it at the end of any year on giving ninety days' notice. It was alleged that operations under the contract ceased January 1, 1950. Plaintiff further alleged that he had paid all indebtedness owing by the partnership; that there are no unpaid debts or outstanding claims against the partnership, and that there are no transactions left open or undetermined. It was further alleged that defendant did not pay all wages, as a result of which plaintiff was required to pay certain items of labor, as shown by an exhibit attached. This gave the date of each payment, the name of the person to whom the payment was made and the amount of each payment and the aggregate of them, for which aggregate sum plaintiff prayed judgment.

Shortly stated, appellant's argument is he was to pay extra labor "out of his share of the net profits, as hereinafter defined." The trouble with this contention is that the net profits, as defined, made wages the exclusive obligation of the second party, and this harmonizes with the general purpose of the parties as stated in the first paragraph quoted from the agreement, which provided that the second party should furnish all the labor in connection with the operation of the business.

Appellant further contends that plaintiff cannot maintain an action at law for the sums he paid out for labor, which defendant had agreed to pay, until there had been an accounting between the parties. Here, however, as it is alleged in the petition, there was no unfinished business or disputed property of the partnership and there is no occasion for an accounting. Here there was a specific agreement by the defendant that he would furnish all labor. Plaintiff alleges this was not done; that labor was employed; that plaintiff had to pay for it, being a partner, and he only seeks now to collect it from defendant, who should have paid it in the first place. We think from the authorities it is clear that this action can be maintained. (See, *Truitt v. Baird,* 12 Kan. 420; *Pettingill v. Jones,* 28 Kan. 749, 751, *Clarke v. Mills,* 36 Kan. 393, 13 Pac. 569; 40 Am. Jur. 458, 465; 68 C. J. S. 553, 555, 556.)

After defendant's demurrer to the petition was overruled he filed an answer which contained a general denial and alleged there were certain oral misrepresentations made to him about October 1, 1948, and that there were certain breaches of the agreement on the part of the plaintiff, by reason of which he has been damaged in an amount in excess of $6,215.65, "but no claim is made by defendant on that score." Naturally, any oral agreement they had prior to January 1, 1949, when the written contract was executed, was merged into that instrument. Whatever complaints defendant had with respect to alleged violations of the contract by plaintiff are of no consequence if he claims nothing by reason thereof. Plaintiff demurred to all that part of the answer after the general denial. That demurrer was sustained. We think properly so.

We find no error in the record. The judgment of the trial court is affirmed.